UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| CINDY NAUGHTON, | ) | CASE NO. 19-57960-WLH |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |

---

| | | |
|---|---|---|
| | ) | |
| THE ARBORS AT SANDY SPRINGS | ) | |
| CONDOMINIUM ASSOCIATION, INC., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| CINDY NAUGHTON and | ) | |
| NEIL C. GORDON (as Trustee), | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**NOTICE OF HEARING**

 PLEASE TAKE NOTICE that The Arbors at Sandy Springs Condominium Association, Inc. ("Movant") has filed a *Motion for Relief from Stay* and related papers with the Court seeking an order stating that the automatic stay pursuant to 11 U.S.C. § 362 shall be modified to permit Movant to permit Movant to enforce all land covenants, including proceeding with foreclosure of Movant's statutory condominium lien by way of initiating or continuing a judicial foreclosure action in the state court system.

 PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the *Motion for Relief from Stay* in Courtroom 1403, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, 30303 at 9:30 A.M. on June 27, 2019.

 Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you

file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address of the Clerk's Office is:

    Clerk, U.S. Bankruptcy Court
    75 Ted Turner Drive, Suite 1340
    Atlanta, GA  30303

You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion for Relief from the Automatic Stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the Motion and agrees to a hearing on the earliest possible date.  Movant consents to the Automatic Stay remaining in effect until the Court orders otherwise.

    Respectfully submitted, this 7th day of June, 2019.

                                                     LUEDER, LARKIN & HUNTER, LLC

                              By:    __/s/_ Daniel E. Melchi_____
                                        Daniel E. Melchi
                                        Georgia Bar No. 501187
                                        Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T:  (770) 685-7000
F:  (770) 685-7002
E:  dmelchi@luederlaw.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| CINDY NAUGHTON, | ) | CASE NO. 19-57960-WLH |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |

---

| | | |
|---|---|---|
| | ) | |
| THE ARBORS AT SANDY SPRINGS | ) | |
| CONDOMINIUM ASSOCIATION, INC., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| CINDY NAUGHTON and | ) | |
| NEIL C. GORDON (as Trustee), | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MOTION FOR RELIEF FROM STAY**

COMES NOW, The Arbors at Sandy Springs Condominium Association, Inc. ("Movant"), by and through counsel, Lueder, Larkin & Hunter, LLC, and files this *Motion for Relief from Stay* seeking to have the stay of 11 U.S.C. § 362(a) lifted, modified, or terminated, stating as follows:

1.

Debtor filed a Chapter 7 bankruptcy petition in this Court on May 22, 2019, creating the instant case herein.

2.

Debtor was, at the time of the Chapter 7 petition, and is now the owner of real property in The Arbors at Sandy Springs Condominium community, the address being 6940 Roswell Road, Unit 7E, Atlanta, Georgia, 30328 ("Property").

3.

As the owner of the Property, the Debtor is subject to all terms, conditions, and requirements of the duly recorded *Declaration of Condominium for the Arbors at Sandy Springs, a Condominium* ("Declaration") and the Georgia Condominium Act ("Act"). (Exhibit "A" and O.C.G.A. § 44-3-109(a)).

4.

Pursuant to the Declaration and the Act, Debtor is required to pay to Movant assessments as Debtor's share of the common expenses of maintenance of the Property and the operation of Movant, a non-profit corporation. *Id.*

5.

Movant has a statutory lien on the Property due to non-payment of assessments totaling $11,580.17 as of June 7, 2019. (Exhibit "B"). Debtor's sworn Statement of Intention filed in in this case indicates that Debtor wishes to surrender this property to Movant. The Property is not a benefit to the bankruptcy estate. This case is a Chapter 7 liquidation case, not a Chapter 11, Chapter 12, or Chapter 13 reorganization case. There is no equity in the Property, according to Debtor's sworn Schedules A/B and D.

6.

An intention to surrender the Property to Movant constitutes cause pursuant to 11 U.S.C. § 362(d)(1) for the lifting of the stay of 11 U.S.C. § 362(a) as to actions by Movant against the Property.

7.

There appearing to be no equity in the Property and the fact that this case is not a reorganization case constitute a basis pursuant to 11 U.S.C. § 362(d)(2) for the lifting of the stay of 11 U.S.C. § 362(a) as to actions by Movant against the Property.

WHEREFORE, Movant moves that this Honorable Court ORDER:

(a) that the automatic stay pursuant to 11 U.S.C. § 362(a) be LIFTED, MODIFIED, or TERMINATED pursuant to 11 U.S.C. §§ 362(d)(1) and/or 362(d)(2) to permit Movant to enforce all land covenants related to the Property, including proceeding with foreclosure of Movant's statutory condominium lien by way of initiating or continuing a judicial foreclosure action in the state court system; and

(b) that the stay of F.R.B.P. 4001(a)(3) be WAIVED; and

(c) that any such further relief as the Court may deem just and proper be GRANTED.

Respectfully submitted, this 7th day of June, 2019.

LUEDER, LARKIN & HUNTER, LLC

By:    /s/ Daniel E. Melchi
Daniel E. Melchi
Georgia Bar No. 501187
Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T:  (770) 685-7000
F:  (770) 685-7002
E:  dmelchi@luederlaw.com

EXHIBIT "A"

Deed Book 37592 Pg 187
Filed and Recorded May-19-2004 09:05am
2004-0152181
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

Return to:
Jamie Platt Lyons, Esq.
Weissman, Nowack, Curry & Wilco, P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326

# DECLARATION OF CONDOMINIUM

## FOR

## THE ARBORS AT SANDY SPRINGS, A CONDOMINIUM

WEISSMAN, NOWACK, CURRY & WILCO, P.C.
Attorneys

One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
(404) 926-4500

COPYRIGHT © 2003.
All rights reserved. This Declaration may be used only in connection with the sale of property at The Arbors at Sandy Springs, a Condominium and the operation of The Arbors at Sandy Springs Condominium Association, Inc.

Deed Book 37592 Pg 197

easement) with thirty (30) days prior notice to all Owners, except that, in emergency situations requiring a temporary closing, prior notice shall not be required so long as notice is given within three (3) days after the closing explaining the reason for the closing. Notwithstanding the above, the Owners may re-open closed Common Elements by a majority vote of the total Association vote, cast at a duly called special or annual meeting; and

(m)    to enter into joint agreements and contracts with other community associations for the provision of services, including, without limitation, management, landscaping, property monitoring services, and trash removal services.

10.    ASSESSMENTS.

(a)    Purpose of Assessment. The Association shall have the power to levy assessments as provided herein and in the Act. The assessments for Common Expenses provided for herein shall be used for the general purposes of promoting the recreation, health, safety, welfare, common benefit, and enjoyment of the Owners and Occupants of Units in the Condominium as may be more specifically authorized from time to time by the Board.

(b)    Creation of the Lien and Personal Obligation For Assessments. Each Owner of any Unit, by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (i) annual assessments or charges; (ii) special assessments, such assessments to be established and collected as hereinafter provided; and (iii) specific assessments against any particular Unit which are established pursuant to the terms of this Declaration, including but not limited to reasonable fines imposed in accordance with the terms of this Declaration.

All such assessments, together with charges, interest, costs, and reasonable attorney's fees actually incurred, and if the Board so elects, rents, in the maximum amount permitted by the Act, shall be a charge on the Unit and shall be a continuing lien upon the Unit against which each assessment is made. Such amounts shall also be the personal obligation of the Person who was the Owner of such Unit at the time when the assessment fell due. Each Owner and his or her grantee shall be jointly and severally liable for all assessments and charges due and payable at the time of any conveyance.

Assessments shall be paid in such manner and on such dates as may be fixed by the Board of Directors; unless otherwise provided, the annual assessments shall be paid in equal monthly installments due on the first day of each calendar month. No Owner may exempt him or herself from liability for or otherwise withhold payment of assessments for any reason whatsoever, including, but not limited to, nonuse of the Common Elements, the Association's failure to perform its obligations required hereunder, or inconvenience or discomfort arising from the Association's performance of its duties. The lien provided for herein shall have priority as provided in the Act.

The Board of Directors shall have the right to: (i) not spend the full amount budgeted for any particular line item in the budget; (ii) spend more than what has been budgeted; and (iii) shift revenues within the budget from one line to another.

(c)    Delinquent Assessments. All assessments and related charges not paid on or before the due date shall be delinquent, and the Owner shall be in default.

(i)    If any monthly installment of annual assessments or any part thereof is not paid in full by the tenth (10th) day of the month or if any other charge is not paid within ten (10) days of the due date, a late charge equal to the greater of Ten Dollars ($10) or ten percent (10%) of the amount not paid, or such higher amounts as may be authorized by the Act, may be imposed without further

328277_3.DOC

-8-

Deed Book 37592 Pg 198

notice or warning to the delinquent Owner and interest at the rate of ten percent (10%) per annum or such higher rate as may be permitted by the Act shall accrue from the due date.

(ii) If part payment of assessments and related charges is made, the amount received may be applied first to costs and attorney's fees, then to late charges, then to interest, then to delinquent assessments, and then to current assessments.

(iii) If assessments, fines or other charges or any part thereof due from an Owner remain delinquent and unpaid for a period greater than fifteen (15) days from the date due, a notice of delinquency may be given to that Owner stating that if the assessment, fine or charge remains delinquent for more than ten (10) days from the date of the notice of delinquency, the Board of Directors may accelerate and declare immediately due all of that Owner's unpaid installments of the annual assessment and of any special assessment without any further notice being given to the delinquent Owner. Upon acceleration, that Owner shall thereby lose the privilege of paying the annual assessment in monthly installments for that fiscal year.

(iv) If assessments and other charges or any part thereof remain unpaid more than thirty (30) days after they become delinquent, the Association, acting through the Board, may institute suit to collect all amounts due pursuant to the provisions of the Declaration, the Bylaws, the Act and Georgia law, including reasonable attorneys' fees actually incurred, and suspend the Owner's and/or Occupant's right to use the Common Elements, including the right to bring or park vehicles on the Common Elements or have guests bring or park vehicles on the Common Elements. However, the Board may not limit pedestrian, medical, fire, police or other health, safety, service or emergency vehicle ingress or egress to or from the Unit or deny necessary parking of clearly and properly identified handicapped vehicles used by handicapped owners or occupants protected by the Fair Housing Amendments Act of 1988. Prior to suspending parking privileges, the Association shall provide the delinquent Owner or Occupant written notice of its intention to do so, sent by certified mail not less than ten (10) days prior to the date of such suspension.

(v) If any assessment or other charge is delinquent for thirty (30) days or more, and the Association has obtained judgment(s) totaling more than Seven Hundred Fifty and No/100 Dollars ($750.00) against the Owner or encumbering the Unit, then, in addition to all other rights provided in the Act and herein, the Association shall have the right, in compliance with any requirements set forth in the Section 44-3-76 of the Act, to suspend water, electricity, gas, heat, air conditioning, or other utility services to the Unit paid for as a Common Expense by the Association. Any costs incurred by the Association in discontinuing and/or reconnecting any utility service, including reasonable attorney's fees, shall be an assessment against the Unit. The utility services shall not be required to be restored until the judgment(s) is(are) paid in full, at which time the Association shall make arrangements for restoration of the service. An Owner whose utility or service has been suspended hereunder shall not be entitled to use any such utility or service from any source, and any such unauthorized use shall be considered a theft of services under O.C.G.A. Section 16-8-5.

Notwithstanding the above, if cable television service or any other service not constituting a utility is provided by the Association as a Common Expense, that service may be suspended upon ten (10) days written notice to the delinquent Owner, without obtaining any judgment against the Owner or encumbering the Unit. Enforcement under this subparagraph is not dependent upon or related to other restrictions and/or other actions.

(d) Computation of Operating Budget and Assessment. It shall be the duty of the Board at least twenty-one (21) days prior to the Association's annual meeting to prepare and deliver to each member a budget covering the estimated costs of operating the Condominium during the coming year and a notice of the assessments to be levied against each Unit for the following year. The budget and the assessment shall

-9-

328277 3.DOC

Deed Book 37592 Pg 199

become effective unless disapproved at a duly called and constituted annual meeting of the Association by a vote of a majority of the total Association vote; provided, however, if a quorum is not obtained at the annual meeting, the budget shall become effective even though a vote to disapprove the budget could not be called at this meeting.

Notwithstanding the foregoing, in the event that the membership disapproves the proposed budget or the Board fails for any reason so to determine the budget for the succeeding year, then and until such time as a budget shall have been determined as provided herein, the budget in effect for the current year shall continue for the succeeding year. In such case, the Board may propose a new budget at any time during the year at a special meeting of the Association. The proposed budget and assessment shall be delivered to the members at least twenty-one (21) days prior to the proposed effective date thereof and at least seven (7) days prior to the special meeting. The approval procedure set forth above for budgets considered at annual meetings shall also apply to budgets considered at special meetings.

(e) Special Assessments. In addition to the annual assessment provided for in subparagraph (b) above, the Board may, at any time, and in addition to any other rights it may have, levy a special assessment against all Owners, notice of which shall be sent to all Owners. Any special assessment (except as provided in Paragraph 8(b) regarding the power to assess specially pursuant to Section 44-3-80(b) of the Act and Paragraph 12(b) herein, regarding repair or reconstruction of casualty damage to or destruction of all or part of the Condominium) which would cause the average total of special assessments levied in one (1) fiscal year to exceed Two Hundred and No/100 Dollars ($200.00) per Unit or such higher amount as is authorized by the Act, shall be approved by a majority of the total Association vote prior to becoming effective.

(f) Capital Reserve Budget and Contribution. The Board of Directors shall annually prepare a capital reserve budget that shall take into account the number and nature of replaceable assets, the expected life of each asset, and the expected repair or replacement cost. The Board shall set the required capital reserve contribution, if any, in an amount sufficient to permit meeting the projected capital needs of the Association, as shown on the capital reserve budget, with respect both to amount and timing by equal annual assessments over the period of the budget. The annual capital reserve contribution required, if any, shall be fixed by the Board and included within the budget and assessment as provided in subparagraph (d) of this Paragraph. A copy of the capital reserve budget shall be distributed to each member in the same manner as the operating budget.

(g) Statement of Account. Any Owner, Mortgagee, or a Person having executed a contract for the purchase of a Unit, or a lender considering a loan to be secured by a Unit, shall be entitled, upon written request, to a statement from the Association setting forth the amount of assessments due and unpaid, including any late charges, interest, fines, or other charges against a Unit. The Association shall respond in writing within five (5) business days of receipt of the request for a statement; provided, however, the Association may require the payment of a fee, not exceeding Ten and No/100 Dollars ($10.00), or such higher amount as may be authorized by the Act, as a prerequisite to the issuance of such a statement. Such written statement shall be binding on the Association as to the amount of assessments due on the Unit as of the date specified therein.

(h) Surplus Funds and Common Profits. Pursuant to Section 44-3-108 of the Act, common profits from whatever source shall be applied to the payment of Common Expenses. Any surplus funds remaining after the application of such common profits to the payment of Common Expenses shall, at the option of the Board of Directors, either be distributed to the Owners or credited to the next assessment chargeable to the Owners in proportion to the liability for Common Expenses attributable to each Unit, or added to the Association's capital reserve account as set forth in (f) above.

-10-

328277_3 DOC

Deed Book 37592 Pg 200

If the Board of Directors reasonably determines that during a fiscal year there will likely be a surplus of funds at the end of such fiscal year (excluding amounts designated for reserves), the Board may, but shall not be required to, reduce the amount of the annual assessment to be collected from the Owners for the remainder of that fiscal year. Any Owner who has already paid the entire annual assessment at the time of such reduction shall, in the discretion of the Owner, either receive a refund of the overpayment or a credit of the amount of the overpayment towards the annual assessment of the Association for the following fiscal year. Notwithstanding the above, the Association may first apply the amount of any overpayment toward any other amount the Owner may owe to the Association.

(i)  Working Capital Fund. The Declarant, on behalf of the Association, shall establish a working capital fund to meet unforeseen expenditures or to purchase any additional equipment or services. A non-refundable contribution to the working capital fund of the Association shall be paid by the purchaser of a Unit at the closing of each sale or resale of a Unit in the amount of two (2) months of the general assessment charged to such Unit. The Declarant shall not use the working capital funds to defray any of its expenses, reserve contributions, or construction costs or to make up any budget deficits while it is in control of the Association. Notwithstanding anything to the contrary herein, the contribution to the working capital fund shall not be due from: (i) any grantee who is the Domestic Partner, spouse or former spouse of the grantor; (ii) any grantee that is a wholly-owned entity of the grantor; (iii) any grantee to whom a Unit is conveyed by a will or through the law of intestacy; or (iv) any grantee of a Unit who obtains title pursuant to judicial or nonjudicial foreclosure of any first Mortgage of record or secondary purchase money Mortgage of record (provided that neither the grantee nor any successor grantee on the Mortgage is the seller of the Unit).

11.  INSURANCE.

The Association shall obtain and maintain at all times, as a Common Expense, insurance as required by Section 44-3-107 of the Act, as amended, and as required herein. In accordance with the Act, the property insurance shall, at a minimum, afford fire and extended coverage insurance for and in an amount consonant with the full replacement value of the buildings and other structures on the Condominium. Such coverage shall include all of the Units and the fixtures initially installed therein by the Declarant and replacements thereof up to the value of those initially installed by the Declarant, but shall not include any improvements or additions (including wall coverings and fixtures) made by or on behalf of any Owner other than those made by the Declarant and shall exclude furnishings and other personal property within a Unit.]

All insurance purchased by the Association pursuant to this Paragraph shall run to the benefit of the Association, the Board of Directors, officers, all agents and employees of the Association, the Owners and their respective Mortgagees, and all other persons entitled to occupy any Unit as their interests may appear. The Association's insurance policy may contain a reasonable deductible, and the amount thereof shall not be subtracted from the face amount of the policy in determining whether the insurance equals at least the replacement cost of the insured property.

The Board of Directors shall make available for review by Owners a copy of the Association's insurance policy to allow Owners to assess their personal insurance needs and each Owner shall have the right to obtain additional coverage at his or her own expense.

All insurance coverage for the Association shall be written in the name of the Association as trustee for itself, each of the Owners, and the Mortgagees of Owners, if any. It shall be the duty of the Board of Directors at least every two (2) years to conduct an insurance review to determine if the policy in force is adequate to meet the needs of the Association and to satisfy the requirements of Section 44-3-107 of the Act, as amended. Such responsibility may be performed, and shall be deemed reasonably performed, by the Board requesting the Association's insurance agent to verify that insurance policies in

-11-

328277_3.DOC

# EXHIBIT "B"

Date:  June 7, 2019 11:47 AM
Matter Reference: Moore, Cindy:  Bankruptcy Ch. 7 (filed:  05-22-19)
Property Address: 6940 Roswell Road, Unit 7E, Atlanta, Georgia 30328
Matter Number: 1362-1302-5

**Amounts owed since March 29, 2018**

| Date | Assessment | Misc. Charges | Attorney Fees | Costs | Late Fee | Fine | Payment | Interest | Adjustment Credits | Running Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| March 29, 2018 | $6,103.14 | --- | $2,012.49 | $649.54 | --- | --- | --- | $43.47 | --- | $8,808.64 |
| April 24, 2018 | --- | --- | --- | --- | --- | --- | $300.00 | $82.67 | --- | $8,591.32 |
| June 15, 2018 | --- | --- | --- | --- | --- | --- | $300.00 | $58.80 | --- | $8,350.12 |
| July 24, 2018 | --- | --- | --- | --- | --- | --- | $300.00 | $54.17 | --- | $8,104.29 |
| August 31, 2018 | --- | --- | --- | --- | --- | --- | $300.00 | $53.73 | --- | $7,858.02 |
| October 10, 2018 | --- | --- | --- | --- | --- | --- | $300.00 | $85.76 | --- | $7,643.78 |
| December 17, 2018 | --- | --- | --- | --- | --- | --- | $600.00 | $16.45 | --- | $7,060.23 |
| January 1, 2019 | $239.40 | --- | --- | --- | --- | --- | --- | $36.03 | --- | $7,335.66 |
| February 1, 2019 | $239.40 | --- | --- | --- | --- | --- | --- | $12.28 | --- | $7,587.34 |
| February 11, 2019 | --- | --- | --- | --- | $23.94 | --- | --- | $22.10 | --- | $7,633.39 |
| March 1, 2019 | $239.40 | --- | --- | --- | --- | --- | --- | $12.94 | --- | $7,885.72 |
| March 11, 2019 | --- | --- | --- | --- | $23.94 | --- | --- | $5.17 | --- | $7,914.83 |
| March 15, 2019 | --- | --- | $396.00 | $7.23 | --- | --- | --- | $7.76 | --- | $8,325.83 |
| March 21, 2019 | --- | --- | --- | $19.55 | --- | --- | --- | $34.92 | --- | $8,380.30 |
| April 17, 2019 | --- | --- | $90.00 | --- | --- | --- | --- | $45.27 | --- | $8,515.57 |
| May 22, 2019 | --- | --- | --- | --- | --- | --- | --- | $0.00 | --- | $8,515.57 |
| June 7, 2019 | --- | --- | $729.00 | $181.00 | --- | --- | --- | $0.00 | --- | $9,425.57 |

**Amounts owed since March 29, 2018**

| | |
|---|---|
| Assessments March 29, 2018 to March 1, 2019: | $6,821.34 |
| Accelerated Assessments through 12/31/2019: | $2,154.60 |
| Late Fees: | $47.88 |
| Interest: | $571.54 |
| Attorney's Fees: | $3,227.49 |
| Costs: | $857.32 |
| Payments: | ($2,100.00) |
| Total: | $11,580.17 |

| | |
|---|---|
| **Lien Total:** | **$11,580.17** |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| CINDY NAUGHTON, | ) | CASE NO. 19-57960-WLH |
| | ) | |
|    Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |

---

| | | |
|---|---|---|
| | ) | |
| THE ARBORS AT SANDY SPRINGS | ) | |
| CONDOMINIUM ASSOCIATION, INC., | ) | |
| | ) | |
|    Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| CINDY NAUGHTON and | ) | |
| NEIL C. GORDON (as Trustee), | ) | |
| | ) | |
|    Respondents. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

    This is to certify that, on this day, the person(s) listed below was/were served a copy of the foregoing *Motion for Relief from Stay* and *Notice of Hearing* by the depositing of a copy of the same in the United States mail, with adequate First Class postage affixed thereon, and addressed as follows:

Cindy Naughton
330 Soft Pine Trail
Roswell, GA  30076

    This is to certify that I have, on this day, electronically filed the foregoing *Motion for Relief from Stay* and *Notice of Hearing* using the Bankruptcy Court's Electronic Case Filing program which with sends a notice of this document and an accompanying link to this document to the following person(s) who has/have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

1. Davie E. Galler of Galler Law, LLC
2. Neil C. Gordon, Chapter 7 Trustee

Respectfully submitted, this 7th day of June, 2019.

                                                           LUEDER, LARKIN & HUNTER, LLC

                            By:     /s/ Daniel E. Melchi
                                    Daniel E. Melchi
                                    Georgia Bar No. 501187
                                    Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T:  (770) 685-7000
F:  (770) 685-7002
E:  dmelchi@luederlaw.com